**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Tristian Coleman, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 25-CV-296 |
| v. ) | |
| ) | Honorable Joan B. Gottschall |
| United States Marshals Service; et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This civil action under, *inter alia*, the Fourth Amendment and 42 U.S.C. §§ 1983 and 1985(3) comes before the court on three Federal Rule of Civil Procedure 12(b)(6) motions to dismiss plaintiff Tristian Coleman's amended complaint for failure to state a claim. The U.S. Marshals Service ("USMS" or "Marshals Service") filed the first of these motions. The second and third were filed by Coleman's landlords, defendants Daniel Management Group, Inc. ("Daniel Management"), and NP Grand RG, LLC ("NP Grand"), referred to collectively herein as "landlord defendants." *See* Am. Compl. ¶ 1, Dkt. No. 10. Coleman's claims arise out of efforts by five unknown USMS officers to execute a warrant for the arrest of Joseph Jackson, not a party here, on February 20, 2024. Am. Compl. ¶¶ 1–5. The Marshals Service argues that it is not a proper defendant under the Federal Tort Claims Act. USMS Mot. to Dismiss ¶ 2, Dkt. No. 34. Landlord defendants contend that the complaint fails to state a claim for holding them liable as state actors or for conspiring with state actors to deprive Coleman of his Fourth Amendment rights. Landlord Defs. Mot to Dismiss 3–4, Dkt. No. 13. For the reasons discussed herein, the court grants the Marshals Service's motion and grants landlord defendants' motion in part and denies it in part, leaving pending Coleman's claim that landlord defendants jointly participated with the unknown officers in a Fourth Amendment violation.

## I.   THE RULE 12(B)(6) STANDARD

Landlord defendants' Rule 12(b)(6) motions test the sufficiency of Coleman's amended complaint rather than the case's merits. *See Richards v. Mitcheff*, 696 F.3d 635, 637–38 (7th Cir. 2012). Rule 8(a)(2) requires every complaint, and every other pleading that states a claim for relief, to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To withstand a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56. When testing a complaint's sufficiency, the court accepts the complaint's well-pleaded facts as true and draws reasonable inferences from those facts in the plaintiff's favor, but conclusory allegations that merely recite the elements of a claim do not enjoy a presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

## II.   THE AMENDED COMPLAINT

Consistent with the Rule 12(b)(6) standard, the court accepts the following facts alleged in Coleman's amended complaint as true. On February 20, 2024, five USMS law enforcement officers, named in the amended complaint as "unknown officers," went to Coleman's apartment building to execute a warrant to arrest Joseph Jackson, who was found later that day in the apartment across the hall from Coleman's apartment. *See* Am. Compl. ¶¶ 3–5, 24–27. Jackson's name did not appear on Coleman's lease. Am. Compl. ¶ 2. Coleman and Jackson are both black men, and both men had a similar "locs" hairstyle at the time. Am. Compl. ¶¶ 18, 27. In what one of the landlord defendants' employees allegedly later implied was a "mix-up based on race and hairstyle," a property manager gave the officers a key to Coleman's apartment when they presented the warrant for Jackson's arrest. Am. Compl. ¶ 29.

At about 5:30 PM, the officers knocked on the door of Coleman's apartment, put their key in the keyhole, and yelled "Police! U.S. Marshals Service. Arrest warrant!" twice. Am. Compl. ¶ 3. Coleman was in the shower. Am. Compl. ¶¶ 4, 12, 15. Clad in only a towel, he

2

hurried to the door, where he gave his name and told the officers they had the wrong apartment. *See id*. They insisted that Coleman open the door. Am. Compl. ¶ 5. The officers pulled Coleman out of his apartment and left him standing barefoot and dripping wet in the hallway. Am. Compl. ¶¶ 7–8. The officers searched the apartment with the assistance of a trained police dog. *See* Am. Compl. ¶¶ 8, 10–16. The unknown officers allegedly ignored Coleman's repeated requests that they check his identification. *See id.* Am. Compl. ¶¶ 8, 14, 17–19. The episode ended at about 5:50 PM with the officers releasing Coleman after declining to look at his identification. *See* Am. Compl. ¶¶ 17–23.

"On May 2, 2024, Plaintiff's wife corresponded [by phone] with Landlord . . . who confirmed providing key access as compliance with USMS, stating verbatim 'for them to arrest [your] husband, Suspect name' —which is not Plaintiff's name per the Lease, and further implying a 'mix-up' based on race and hairstyle." Am. Compl. ¶ 29 (brackets in original). Coleman brings claims under the Fourth Amendment; *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971); 42 U.S.C. §§ 1983, 1985(3), 1986; and the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671–80. Am. Compl. 1, 7–8. He "also claims violation of rights that may be protected by Illinois law, such as false arrest, assault, battery, false imprisonment, malicious prosecution, conspiracy, and/or other claim [sic] that may be supported by the allegations of this complaint." Am. Compl. ¶ 34. In addition to Coleman's landlords, the amended complaint names as defendants the U.S. Marshals Service, and the unknown law enforcement officers who entered his apartment on February 20, 2024.

### III. LANDLORD DEFENDANTS' MOTION TO DISMISS

Landlord defendants argue that the amended complaint fails to state a plausible conspiracy claim against them. Coleman pleads that his landlords "failed to intervene to protect [him] from violation of [his] civil rights by neglecting proper due diligence with the Lease, at minimum," and that landlord defendants "conspired together [with defendant unknown officers] to violate one or more of Plaintiff's civil rights." Am. Compl. ¶ 32. As an initial matter, these

3

"threadbare recitals of the elements" of Coleman's claims must be disregarded for purposes of the Rule 12(b)(6) analysis, for they do not by themselves raise his right to relief above the speculative level. *Iqbal*, 556 U.S. at 679–81 (citing *Twombly*, 550 U.S. at 555).

**A. Claim under 42 U.S.C. § 1983**

Title 42 United States Code, Section 1983 permits a private plaintiff to bring suit for money damages for a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States against a "person" acting "under color of" state law. 42 U.S.C. § 1983. To impose § 1983 conspiracy liability, Coleman must plausibly allege that "(1) a state official and private individual(s) reached an understanding to deprive [him] of his constitutional rights, and (2) those individual(s) were willful participants in joint activity with the State or its agents." *Green v. Howser*, 942 F.3d 772, 779 (7th Cir. 2019) (brackets omitted) (quoting *Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019)).

Coleman's § 1983 claims against landlord defendants fail for the reason that the five unknown USMS officers were "all federal, agents individually acting under the color of federal authority." Am. Compl. 2. Coleman's § 1983 claims against landlords are dismissed for failure to allege an agreement between landlords on the one hand and at least one state (rather than federal) official on the other.[1] *See Fairchild v. Cundiff*, 2024 WL 1328885, at *1 (N.D. Ill. Mar. 28, 2024) (citing *Case v. Milewski*, 327 F.3d 564, 567 (7th Cir. 2003)).

**B. Bivens Conspiracy Claim and Conspiracy Claim under 42 U.S.C. § 1985(3)**

Coleman argues in his response that he has stated a § 1983 claim and concedes that *Bivens* does not apply to landlord defendants. *See* Dkt. No. 40 at 4–7. Contrary to Coleman's concession, his arguments for imposing § 1983 liability are more appropriately analyzed under

---

[1] In addition to conspiracy, the Seventh Circuit has recognized that a private defendant may be held liable under § 1983 on a "public officer pro tem" theory. *See Proffitt v. Ridgway*, 279 F.3d 503, 507–08 (7th Cir. 2002). For example, "Suppose that in an emergency the police deputized a bunch of private citizens to help them enforce the law, and the deputizations were entirely informal, perhaps not even in accordance with state or local law." *Id.* Coleman does not argue that his amended complaint contains well-pleaded facts supporting imposing § 1983 liability on landlords under a "public officer pro tem" theory.

4

*Bivens*. In *Bivens* and subsequent cases, the Supreme Court recognized a limited implied cause of action for money damages against federal officers for alleged constitutional violations. *See Ziglar v. Abbasi*, 582 U.S. 120, 130–32 (2017); *Iqbal*, 556 U.S. at 675; *Engel v. Buchan*, 710 F.3d 698, 704–05 (7th Cir. 2013). "In the limited settings where *Bivens* does apply, the implied cause of action is the 'federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983.'" *Iqbal*, 556 U.S. at 675–76 (quoting *Hartman v. Moore*, 547 U.S. 250, 254 (2006)).

The Seventh Circuit has utilized the following definition of a § 1983 conspiracy when analyzing a *Bivens* claim:

> A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.

*Scherer v. Balkema*, 840 F.2d 437, 441 (7th Cir. 1988) (quotation omitted). To state a claim of civil conspiracy under *Bivens*, "a plaintiff must show (1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *Id.* at 442; *see Norman v. Campbell*, 87 F. App'x 582, 584 (7th Cir. 2003) (holding that complaint failed to state *Bivens* conspiracy claim against private actors); *see also Abbasi*, 582 U.S. at 150–52 (employing similar definition of "conspiracy" under § 1985(3)).

As with his *Bivens* claim, Coleman's conspiracy claim under 42 U.S.C. § 1985(3) requires plausible allegations of an express or implied agreement. That statute authorizes a plaintiff to bring "a cause of action for persons who are victims of a conspiracy to deprive them of the 'equal protection of the laws' or 'equal privileges and immunities under the laws.'" *Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 827 (7th Cir. 2022) (quoting *Bowman v. City of Franklin*, 980 F.2d 1104, 1108–09, 1108 n.4 (7th Cir. 1992)). A plaintiff must plausibly allege the following elements of a § 1985(3) conspiracy claim:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges

> and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Id.* (quoting *United Bhd. of Carpenters v. Scott*, 463 U.S. 825, 828–29 (1983); other citation omitted); *McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 790 (7th Cir. 2019) (quotation omitted).

To plead the first element of a § 1985(3) conspiracy claim, a plaintiff must plausibly allege what is also required for § 1983 and *Bivens* conspiracy liability: "an express or implied agreement among the defendants to deprive plaintiffs of their constitutional rights." *Milchtein*, 42 F.4th at 827 (citing *Wilson v. Giesen*, 956 F.2d 738, 744 (7th Cir. 1992)). "To establish the existence of a conspiracy, a plaintiff must show that the conspirators agreed to inflict injury upon him; in other words, that they acted with a single plan, the general nature and scope of which was known to each conspirator." *Green v. Benden*, 281 F.3d 661, 666 (7th Cir. 2002) (citing *Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 263 (7th Cir. 1999)). Taking the amended complaint in a light favorable to Coleman, he alleges that a property management employee gave the officer defendants the wrong key without verifying names on the pertinent leases because Coleman and Jackson, the suspect named in the warrant, were both black men and had a similar "locs" hairstyle. *See* Am. Compl. ¶¶ 3, 28–29.

Nothing in the amended complaint indicates that the officer defendants were aware, or should have been aware, that they had been given the wrong key, much less that they reached an understanding with landlord defendants about the general nature and scope of the alleged violation. *See id.* The amended complaint leaves to speculation how an agreement might have been reached. That does not satisfy the *Twombly-Iqbal* plausibility standard. The amended complaint has not "nudged [Coleman's] claims" of a conspiracy between landlord defendants and officer defendants "across the line from conceivable to plausible." *Twombly*, 555 U.S. at 570 (affirming dismissal of an antitrust conspiracy claim); *see Norman v. Campbell*, 87 F. App'x 582, 584 (7th Cir. 2003) (affirming dismissal of a *Bivens* conspiracy claim); *Green*, 281 F.3d at 666 (affirming summary judgment dismissal of § 1985(3) conspiracy claim). The court therefore

dismisses the *Bivens* conspiracy and 42 U.S.C. § 1985(3) claims pleaded in Coleman's amended complaint.

**C. Bivens Claims Against Landlord Defendants as Willful Participants in Joint Activity**

Coleman also seeks to hold landlord defendants liable directly under *Bivens* as federal actors. He quotes the following passage from the Supreme Court's opinion in *Adickes v. S.H. Kress & Co.*: "To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents." 398 U.S. 144, 152 (1970); *see also Lugar v. Edmundson Oil Co., Inc.*, 457 U.S. 922, 941 (1982) (stating that the Court has "consistently" applied this rule). Settled Fourth Amendment law makes clear that "a landlord may not consent to a search on the tenant's behalf." *United States v. Thomas*, 65 F.4th 922, 924 (7th Cir. 2023) (citing *Katz v. United States*, 389 U.S. 347 (1967), and *Georgia v. Randolph*, 547 U.S. 103, 110–12 (2006)); accord *Chapman v. United States*, 365 U.S. 610, 616–18 (1961).

The parties cite no case analyzing the state action requirement where a landlord consented to law enforcement officers entering or searching a tenant's residence. Coleman relies heavily on *Montgomery v. Village of Posen*, 2015 WL 393385 (N.D. Ill. Jan. 28, 2015). In *Montgomery*, the plaintiff rented a property for his business. *Id.* at *1. After giving his consent, he withdrew his consent for city police to search the property, but the search went ahead with the landlord's consent. *See id.* The district court denied a Rule 12(b)(6) motion filed by several law enforcement officers and officials and held that the plaintiff pleaded a plausible § 1983 claim. *See id.* at *1–2. But the plaintiff in *Montgomery* did not name his landlord as a defendant, so the court had no occasion to opine on the standard for pleading a plausible § 1983 claim against a landlord who allegedly consents to a search of a rental property. *See id.* at *2.

Since the cases the parties cite are not on point, the court looks for guidance to cases analyzing state action in the context of a landlord/tenant relationship. "Generally, the private use of state-sanctioned remedies will not rise to the level of state action. However, state action will

7

be found when private parties make extensive use of state procedures with 'the overt, significant assistance of state officials.'" *Apostol v. Landau*, 957 F.2d 339, 343 (7th Cir. 1992) (citation modified) (quoting *Tulsa Pro. Collection Servs. v. Pope*, 485 U.S. 478, 486 (1988); other citation omitted); *see also Case v. Milewski*, 327 F.3d 564, 567–68 (7th Cir. 2003)). A landlord who carries out a private eviction with the assistance of law enforcement may be held liable as a state actor, depending on the circumstances. *See Soldal v. Cook Cnty.*, 942 F.2d 1073, 1075 (7th Cir. 1991) (*en banc*) (citing *Del's Big Saver Foods, Inc. v. Carpenter Cook, Inc.*, 795 F.2d 1344, 1346 (7th Cir. 1986); other citation omitted), rev'd in part on other grounds 506 U.S. 56 (1992); *Greco v. Guss*, 775 F.2d 161, 166–67 (7th Cir. 1985) (discussing with approval *Howerton v. Gabica*, 708 F.2d 380, 383–85 (9th Cir. 1983)). *Greco* holds that "[a] police agreement to 'stand by in case of trouble' does not convert a private repossession into state action." 775 F.2d at 168. The *Greco* opinion also makes clear that "[a]t some point, as police involvement becomes increasingly important, repossession by private individuals assumes the character of state action.'" *Id.* (citation modified) (quoting *Howerton*, 708 F.2d at 383); *see also Soldal*, 942 F.2d at1075; *Latosky v. Strunc*, 2009 WL 1073680, at *8–10 (E.D. Wis. Apr. 21, 2009).

In the eviction cases cited in the prior paragraph, the landlord, or another private actor, requested law enforcement assistance with a landlord-initiated repossession. *See, e.g.*, *Greco*, 775 F.2d at 167; *Sodal*, 942 F.2d at 1075; *Latosky*, 2009 WL 1073680, at *8–10. Here, by way of contrast, Coleman does not allege that landlord defendants were involved in procuring the arrest warrant the officers were serving on February 20, 2024. *See* Am. Compl. ¶ 1. Nor are landlord defendants' employees or agents alleged to have been present when the officers went to Coleman's door, entered his apartment, handcuffed him, and searched the apartment. *See* Am. Compl. ¶¶ 1–33. Viewed favorably to Coleman, his amended complaint alleges that an employee of landlord defendants misidentified Coleman as the person named on the warrant and directed the officers to the wrong apartment. *See* Am. Compl. ¶¶ 3, 29. That does not state a plausible claim that landlord defendants participated "willfully" in the search of Coleman's apartment. *Adickes*, 398 U.S. at 152.

8

## IV. THE MARSHALS SERVICE'S MOTION TO DISMISS

As the USMS argues, "The only proper defendant in an FTCA action is the United States." *Jackson v. Kotter*, 541 F.3d 688, 693 (7th Cir. 2008); *see also Levin v. United States*, 568 U.S. 503, 506–07 (2013). In response, Coleman concedes that the USMS is not a proper defendant for his FTCA claims and requests leave to amend his complaint to name the United States as a defendant. Resp. to USMS Mot. to Dismiss 3, Dkt. No. 41. That request is granted.

Coleman contends in his response memorandum that the USMS is a proper defendant for his § 1983 and *Bivens* claims, though he cites no authority supporting his arguments. *See id*. As explained above, however, a § 1983 claim requires a state, not federal, actor, and Coleman identifies no state actor in his complaint. Since the USMS is a federal agency, more precisely a bureau within the Justice Department, Coleman's § 1983 claims against the USMS are dismissed. *See* 28 U.S.C. § 561(a). Nor may Coleman sue the USMS under *Bivens*. The Supreme Court, in its 1994 decision in *FDIC v. Mayer,* declined to extend *Bivens* to permit claims against federal agencies, "even though the agency— because Congress had waived sovereign immunity—was otherwise amenable to suit." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 69 (2001) (discussing *FDIC v. Meyer*, 510 U.S. 471, 484–86 (1994)). Coleman's *Bivens* claim against the USMS is accordingly dismissed. In so ruling, the court notes that the unknown officers have not appeared in this action and have not moved to dismiss the amended complaint. This order therefore does not affect Coleman's claims against the unknown officers.

## V. CONCLUSION

For the reasons stated, the court grants the separate motions to dismiss filed by landlord defendants and the United States Marshals Service. The claims pleaded in the amended complaint against the U.S. Marshals Service; NP Grand RG, LLC; and Daniel Management Group, Inc., are dismissed. Plaintiff is given twenty-one days, until and including September 29, 2025, to file a second amended complaint, if he wishes to do so.

Date: September 8, 2025 /s/ Joan B. Gottschall
United States District Judge

9